OVERSEER OF THE POOR OF TEWKSBURY TOWNSHIP, COUNTY OF HUNTERDON, v. OVERSEER OF THE POOR OF BRANCHBURG TOWNSHIP, COUNTY OF SOMERSET.

1. The judgment of the Court of Quarter Sessions, in a settlement case, will not be reversed on the facts, where there is any legal evidence to sustain it.

2. The act to amend "An act relative to writs of *certiorari*," approved February 17th, 1881, (*Pamph. L., p.* 34,) making it the duty of the court to determine disputed questions of fact as well as of law in cases of writs of *certiorari* brought (among other things) *to review the proceedings of any special statutory tribunal*, is not applicable to a judgment of the Court of Quarter Sessions in a settlement case.

On *certiorari* to the Court of Quarter Sessions of Somerset county. An appeal was taken by Tewksbury township from an order of removal of a pauper, Simon Van Liew, to that township from Branchburg township.

Argued at June Term, 1882, before Justices SCUDDER and KNAPP.

For the prosecutor, *H. B. Herr.*

For the defendant, *A. A. Clark.*

The opinion of the court was delivered by

SCUDDER, J. The only question raised on the return to this writ is, whether the evidence is sufficient to show the settlement, and sustain the order of removal of the pauper from Branchburg to Tewksbury. The facts proved show

that Simon Van Liew, a colored man, aged sixty-seven years, was born at Hackettstown; that when he was about nine years old, Philip Huyler, now deceased, took him from John Johnson in payment of a debt; that Huyler had some papers which he brought home with Van Liew, which were put in a desk and afterwards were destroyed by accident; that at the time Huyler informed Van Liew they were destroyed, he answered that he would serve him without them in the way he bought him until he was twenty-five years old, which was the legal time of service for the son of a slave; that until he was twenty-five years old he received no wages, but then Huyler gave him $100 and a freedom suit, and afterwards paid him wages. Van Liew testified that he was the son of Rachel Johnson, who lived with John Johnson, died at his house, and was a slave.

Philip Huyler lived in Branchburg township the last ten or twelve years of his life; but before that time, and while Van Liew lived with him and worked for him, he resided in Tewksbury township, on the Huyler farm, which he then owned and afterwards sold to his daughter.

It was adjudged under this evidence, that Van Liew was the son of a slave, born after the 4th day of July, 1804; that he was legally transferred by John Johnson, the owner of his mother, to Philip Huyler; that afterwards, as such servant, he served with Huyler in Tewksbury township for the space of seven years, and until he was free by law, and since that time, he has obtained no other legal settlement. *Rev., p.* 844, § 33.

There was certainly some legal evidence of the transfer of Van Liew and of service under it, perhaps the best that was attainable after the lapse of so many years. The Court of Quarter Sessions adjudged it to be sufficient, and affirmed the order of removal to Tewksbury.

In *Kingwood* v. *Bethlehem*, 1 *Green* 221, Justice Ford says, " that if the Sessions had any legal evidence of the fact [in that case of the consent of the master of an apprentice to his service with another man so as to gain a settlement], we will never

inquire into it, but take it as they did.   We do not allow
them to settle the law for us, but we never dispute the facts
they find, nor weigh the circumstances over again on *cer-
tiorari.*"   This is a repetition of the ruling of the court in
*Independence* v. *Pompton,* 4 *Halst.* 209, where it is said that it
is a clear and well-settled rule that this court, in settlement
cases, has no jurisdiction or control over the Sessions in matters
of fact, or of the credibility of witnesses; and this court is
not to examine and decide controverted questions of fact, but
questions of law only, upon facts found, established and cer-
tified by the Sessions.   This rule of law has not been changed
by subsequent legislation relating to the writ of *certiorari.*
The recent statute of 1881, (*Pamph. L.,* p. 34,) making it the
duty of the court to determine disputed questions of fact as
well as law, in cases of writs of *certiorari* brought to remove
any tax or assessment, or other order or proceeding touching
any local or public improvement, or to review the proceedings
of any special statutory tribunal, is not applicable to the judg-
ments of the Court of Quarter Sessions on appeal in settlement
cases.   The words of the statute do not comprehend proceedings
in a court of record having a general jurisdiction in criminal or
civil matters, and by the ordinary rules of procedure in courts
of law, but it includes those special statutory tribunals, out-
side of courts, which only exist in the form and for the pur-
pose indicated by the law which has created them.

  The order of the Sessions will be affirmed, with costs.